O'Dell and others vs. Rogers and others.

O'DELL and others vs. ROGERS and others.

PROBATE OF WILL: NOTICE: JURISDICTION: INFANTS: ESTOPPEL: WAIVER. *(1)* Notice of probate. *(2)* Waiver of notice. *(3, 4)* Estoppel of adult heirs to dispute probate. *(5-8)* Infant heir; necessity of guardian. How infant not originally bound may be estopped to dispute probate.

EXECUTOR'S SALES OF LAND: PURCHASE BY EXECUTOR AND ATTORNEY: INFANT: ESTOPPEL. *(9-12)* Disqualification of executors and attorneys to purchase: Copurchasers, with knowledge of disqualification: Temporary intermediate estate. *(13, 14)* Estoppel of adult heirs to question sales. *(15)* Estoppel of infant heir. *(16)* What law determines majority. *(17)* Time given for disaffirmance after reaching majority. *(18-21)* EVIDENCE.

1. Notice of the time and place of proving a will, given by publication, must be published "for three weeks successively, previous to the time appointed" (R. S., ch. 97, sec. 18); and where an order fixing the 27th of May for that purpose, signed and dated May 6th, was published May 4th, but the first and last publication after its date were respectively on the 7th and 19th of that month, the notice was insufficient.

2. Where, however, the proper county court, after a hearing at the time and place duly appointed therefor, has admitted a will to probate, issued letters testamentary to the persons named in it as executors, etc., the proceedings, while invalid as to persons not duly notified, who did not appear or assent to them, and have done no acts of ratification, are valid as to all who were duly notified, or who appeared or assented to them.

3. The wife and one of the heirs of a testator were named as executrix and executor in the will, proposed it for probate, took letters testamentary, made sales of the estate, received their shares of the proceeds, and made final settlement with the county court. *Held,* that they are estopped to deny the validity of the proceedings admitting the will to probate, and granting letters testamentary. And they cannot set up the fact that they acted under the direction and undue influence of one of the defendants as their attorney, where subsequently, with full knowledge of all the facts, they voluntarily confirmed and ratified all the proceedings.

4. Two of the heirs, being of full age, appeared by attorney at the probate of the will, received their shares of the proceeds of the executors' sales, and executed receipts, releases and deeds of confirmation. *Held,* that they are *estopped* from questioning the validity of the probate and of the issue of letters testamentary.

5. Although the statute is silent as to the appointment of a guardian to represent infant heirs and others under disability at the probate of wills, such appointment is necessary in all cases where notice to persons interested in the estate is required; the proceedings, though regular and sufficient as to all others, are void as to such persons not so represented; and an infant not so represented cannot be charged with laches, consent or ratification during minority.

6. Where a guardian is appointed for such an infant only *during the final settlement* of the estate, and acts in his behalf in such settlement, and in receiving the proceeds of sales made under the will, and in executing receipts and acquittances therefor, this does not give validity, as against such infant, to the *prior* proceedings; but, within a reasonable time after becoming of age, he may disaffirm them on the ground of infancy.

7. One who seeks to take advantage of a failure of the court to acquire jurisdiction of his person, must object for want of jurisdiction alone, and keep out of court for every other purpose. If he asks relief which can be granted only on the hypothesis that the court has jurisdiction of the subject matter and of his person, this is a waiver of all defects in the service of process.

8. An heir, who was an infant at the times of the probate of the will and subsequent proceedings touching the estate, joined in a petition to the probate court after she became of age, alleging want of notice of the time and place of probate by personal service or due publication, but not the fact of her infancy and nonrepresentation by guardian, as showing lack of jurisdiction in the court to admit the will to probate; and, after alleging various acts of fraud or undue influence to impeach subsequent proceedings of the executors, and denying the jurisdiction of the probate court to make orders directing and confirming sales, etc., prayed that the probate of the will and all orders and proceedings in the matter of the estate might be set aside, and also for general relief. The complaint in this action (in which she joins) also sets up the alleged fraudulent dealings with the estate since the decree of probate, and, without questioning the validity of the will or its due proof, asks relief consistent only with a valid probate, and the due appointment of executors. *Held*, that the petition and complaint operate as an assent and submission on her part to such probate and appointment.

9. Executors, unless expressly authorized by the will, cannot become purchasers at sales of the estate directed by the will, even where the statutory prohibition (R. S., ch. 94, sec. 27) may not apply.

10. One of the purchasers at the executors' sale of the property was an attorney-at-law, who had been the attorney and legal adviser of the testator in his lifetime; advised with him as to the making of the will, in his last sickness; drew the will, and suggested the executor and executrix

named therein (who were incompetent for such a trust), agreeing to advise them in the management of the estate; became, on the testator's death, the attorney and legal adviser of the executors and of the heirs; and, until the final settlement of the estate, had virtual control of all the proceedings. *Held*, that, at the option of parties interested in the estate, and without proof that the sales were not made fairly and for a price apparently adequate at the time, such attorney might be charged as trustee of the property so purchased, and required to account therefor as fully as the original trustees.

11. Persons who united with such attorney in the purchase, with full knowledge of the facts affecting his disability, are also chargeable, with him, as trustees of the property.

12. Land of the estate, conveyed by the executor and executrix to said purchasers, and by them reconveyed to the executrix in part payment of her share of the proceeds of the estate, and by her subsequently conveyed to N., afterwards came back to said attorney and one of his original copurchasers. *Held*, that it then became chargeable with the same trusts as if purchased directly from the executrix, whatever may have been the relation of N. to it. *Ely v. Wilcox*, 26 Wis., 91.

13. The executor and executrix, who were parties to all improper dealings with the estate, and received the proceeds thereof, cannot be heard in equity to impeach the sales of the property and settlement of the estate.

14. One of the heirs, being of full age, with full knowledge of the facts, and having been fully advised by her legal counsel of her right to have the sales avoided, voluntarily abandoned her rights, received her share of the proceeds, and executed a quitclaim deed of a part of the property to one of the executors, and an instrument under seal in the nature of a release, ratification and confirmation of the whole proceedings. *Held*, that she cannot be heard to question said transactions.

15. Another heir was an infant during all the transactions here complained of, and, since her majority, has remained in the silent enjoyment of what she received while an infant as her share of the proceeds of the estate, but has done no other act to confirm the sales, etc.; and, within a reasonable time after her majority, joined in this action to avoid such sales and compel an accounting by the original purchasers, etc. *Held*, that she may maintain the action against such purchasers, notwithstanding acts done by or for her during her minority, which, if done by a person of full age, would have created an estoppel.

16. The property, and the testator's domicile, being in this state, transactions between said plaintiff and the executors or the purchasers of the property, which are relied on as an estoppel, must be held to have taken place in this state; and the question when she became of full age, must be determined *by the laws of this state*, and not by those of Minnesota, in which she resided with her husband.

17. The question what constitutes the "reasonable time" within which the contracts of a minor must be disaffirmed after he reaches his majority, depends on the circumstances of each case; and the minor heir in this case, who was a resident of Minnesota when she became of age, and does not appear to have been thereafter in this state, or in the vicinity of the estate, or to have known of any change in the situation and value of the property, until, nearly three years after her majority, she brought suit to disaffirm, cannot be held guilty of *laches*.

18. Evidence offered at the trial (in 1877) to show that the original purchasers at the executors' sales (here sought to be charged as trustees) had sold part of the land, and the prices obtained, and the amounts realized from their sales *prior to June, 1872*, though pertinent in an accounting, was immaterial in ascertaining the value of the property at the time of the sale to said defendants (in 1870); evidence showing the prices obtained at the same time for lots of land of the same character, and facing or abutting upon that here in question, would have opened a controversy upon side issues; and both were properly rejected.

19. Evidence of the existence of a stone quarry on a part of the land sold by said defendants to a witness was properly admitted as going to the quality of the land; while evidence of the price paid for it, nearly three years after the sale to said defendants, was properly rejected.

20. One of the heirs, who had executed a release and quitclaim deed of the property sold, was asked, as a witness for the plaintiffs, what he *would have done* at that time *if he had supposed that the sale could be broken up.* *Held,* that the question was properly rejected; the proper subjects of inquiry being only, what the witness in fact *did,* and whether at the time he knew the *facts.*

APPEAL from the Circuit Court for *Milwaukee* County.

Galutia O'Dell died at Milwaukee, in this state, April 26, 1870. The plaintiff *Celestia A. O'Dell* is his widow, and the plaintiffs *George W. O'Dell, Zeruiah A. Reynolds* and *Emma A. Hewitt,* and the defendant *Mary C. Brewer,* are his children and heirs; and the defendant *Frederick Brewer* is the husband of said *Mary C. Brewer.* *Emma A. Hewitt* did not become twenty-one years of age until October 17, 1873. At and since the time of her father's death, she was and has been a married woman, and a resident of the state of Minnesota, by the statutes of which state a woman of the age of eighteen years is considered of full age for all purposes. *Zer-*

*uiah A. Reynolds* was a married woman, and a resident of the state of Minnesota, from October 1, 1870, until October 15, 1871. At the time of his death, Galutia O'Dell was owner in fee of certain real estate in the 8th ward of the city of Milwaukee, embracing about 140 acres; but this property was almost wholly unproductive, and he could not obtain sufficient income from it to support his family and pay the taxes and other expenses incident to such ownership, and had been obliged for those purposes to mortgage the property; and there were four of such mortgages outstanding at his death, to the aggregate amount of $12,000. All these bore interest at ten per cent.; the last of them, for $2,000, was made about three weeks before his death; and one of them, for $3,000, was then due. Apart from this real estate, he left no property, except a few articles of personal property of less than $200 value, and a trifling sum of money insufficient to pay the expenses of his funeral.

By his last will, executed three days before his death, he appointed *Celestia A.* and *Geo. W. O'Dell* executor and executrix, and devised and bequeathed to them all his property in trust to pay his debts, etc., with power to sell and dispose of the whole of it at public or private sale, at such times, in such portions, in such manner, and upon such terms, as they should think proper; and he further directed that, as soon after his decease as the real estate could be sold to advantage, they should sell the same, and that, after payment of debts, etc., the funds remaining in their hands from such sale should be distributed, one-third to the widow, her heirs and assigns, in lieu of dower, and the remaining two-thirds in equal shares to the four children.

On the 6th of May, 1870, an order was made by the Milwaukee county court in probate, which recited that the above instrument had been filed in said court, and that application had been made by *Celestia A. O'Dell* and *George W. O'Dell* for its admission to probate, and for their appointment as ex-

ecutors; and it was ordered that the application be heard on the 27th of the same month, and that notice be given by publishing a copy of the order for three successive weeks, once in each week, prior to the hearing, in a certain newspaper of that city. The order seems to have been published in fact on the 4th of May prior to its date; its first subsequent publication was May 7th, and the last, May 19th. On the 27th of that month, the county court received proofs of the will, admitted it to probate, issued letters testamentary to the executors therein named, and appointed appraisers. On the 9th of June, 1871, said court made an order appointing the 3d of July following as the time for examining and allowing the accounts of the executors and assigning the residue of the estate; and on said 3d of July, it made what purported to be a final decree in the matter of said estate. This decree recited, among other things, that the executors, under the power given them by the will, had sold the whole of the testator's real estate, and had duly paid over to each of the heirs and devisees the several amounts devised to them; that each of said heirs and devisees had duly executed and delivered to said executors a full and final release of all claims against them, as such, and against the testator's estate, under the will or otherwise, as appeared by the releases attached to the decree; and that each of them had ratified and confirmed the sales made by the executors, and other acts done by them, under the power given them by the will. The decree thereupon allows and approves the accounts of administration, ratifies and confirms the several acts of the executors and the sales made of the real estate under the power granted by the will, and discharges the executors. The instruments annexed to the decree, and described therein as releases, are executed severally by the plaintiffs *Zeruiah A. Reynolds, George W. O'Dell* and *Emma A. Hewitt,* and the defendant *Mary C. Brewer,* and by Charles L. Hewitt, as guardian of said *Emma A. Hewitt.* The last named instrument is dated March 31, 1871, and recites, among other things, that

*Emma A. Hewitt* is "now a minor under the age of twenty-one years," and is the wife of Charles L. Hewitt; that on the 29th of March, 1871, said Charles L., on due application, etc., was duly appointed guardian of said *Emma A. Hewitt* by said county court, filed his bond, took the usual oath, etc., and was then acting as such guardian; and that, as such, he thereby acknowledged the receipt from said executors of one-sixth of the proceeds arising from the sale of said estate by them, under said will, to wit, $6,057.97, so bequeathed to *Emma A. Hewitt;* and that, as such guardian, in behalf of said *Emma A.*, and in his own behalf, he thereby released, acquitted and discharged said executors from all demands and claims whatever due to said *Emma A. Hewitt* under said will or out of said estate, and ratified and confirmed the sales of the estate made by the executors, etc.   To this instrument was attached another of the same date, signed by *Emma A. Hewitt*, which recites that she is the wife of Charles L. Hewitt, and is nearly nineteen years of age, and requests said executors to pay over to her husband and guardian the amount due her for the sale of her father's estate, which is recited to be $6,057.97; and she thereby releases all her claims upon said executors or against said estate, upon payment of said sum to her husband and guardian, accepting such payment as a payment to herself, and ratifying and confirming all acts done by him, and all receipts and releases given or to be given by him, in regard to said estate.   The character of the other instruments sufficiently appears from the decree above described.

The defendant *Rogers* was during 1870, and ever since has been, an attorney-at-law of said circuit court, residing at Milwaukee; he was the attorney of Galutia O'Dell in his lifetime, and drew said will; and he was also the attorney and counselor of the executors in procuring the several orders made by the county court in the matter of said estate and its settlement.

In view of the condition of the estate at the death of Galutia

O'Dell, the widow and heirs were desirous to rid themselves
of taxes and of the interest of the outstanding mortgages,
neither of which could be met with the income of the prop-
erty; and accordingly the executors took early steps to have
said property, or some part of it, sold for the extinguishment
of the incumbrances, and for the division of the net proceeds
as required by the will; and, shortly after procuring probate
of the will, they offered to sell about 15½ acres to the defend-
ants *Burnham* and *Rogers*, at $500 per acre; and on the
28th of July, 1870, said two defendants purchased said land,
and received from the executors a conveyance thereof, at the
price above named, which was its full value.  Of this pur-
chase money, the sum of $5,266.13 was paid by *Burnham* and
*Rogers* to extinguish two mortgages upon a part of the prop-
erty; and the balance of said purchase money was paid partly
to the executors, and partly, at the request of the latter, to the
legatees.    There then remained incumbrances or mortgages on
portions of said estate yet unsold, to the amount of $7,000 of
principal, besides accrued interest.   During the summer and
fall of 1870, the executors, and particularly *Celestia A. O'Dell*,
made efforts to effect further sales, but without success, until
November, 1870, when, at her request, the defendant *Burnham*
made an offer to the executors to purchase all the remaining
real estate (about 122 acres) at $350 per acre.   The executors
had said offer under consideration for several days, and ad-
vised with their friends in respect thereto, and with all the
heirs excepting *Reynolds* and *Hewitt*; and on the 24th of No-
vember, 1870, they deliberately accepted said offer, and entered
into a written contract with *Burnham* for the sale of such
real estate, including all the unsold lands of the estate, except
a small parcel described in the contract (about 4½ acres), which
was omitted at the request of the executors.  *Burnham* made
this offer, and entered into this contract, expecting that his
brother would join him in the purchase; but said brother after-
wards declined to do so; and thereupon *Burnham*, not wish-

ing to complete and manage the purchase alone, and desiring the aid of defendants *Rogers* and *Becher* (who were then real estate brokers in the southern portion of the city of Milwaukee) in the platting, management and sale of said property, on the 28th of November, 1870, offered them a share in said purchase; but *Becher* refused to take an interest in the purchase, and it was thereupon on the same day agreed between *Burnham* and *Rogers*, that *Burnham* should sell and transfer to *Rogers* an equal interest in the land so purchased, less 19.52 acres, which were to be conveyed to *Celestia A. O'Dell*, and which included the parcel of about 4½ acres reserved by the contract of November 24th.  On the next day, *Becher* consented to join *Rogers* in his purchase from *Burnham*, so that the three should hold said land (102.64 acres) as equal owners. On said 29th of November, the executors and *Burnham* met at the office of *Rogers* and *Becher*, to complete the sale according to the contract of November 24th, and the executors then and there executed and delivered to *Rogers, Burnham* and *Becher* a deed of the 102.64 acres.  Said grantees executed to the executors their eight several promissory notes of the same date for part of the purchase money of said lands, viz., for $23,722.63, in the aggregate, with interest, secured by mortgage of the same property.  They also assumed the incumbrances on the property, then amounting to $7,201.13; and they claim to have paid the remainder of the purchase money ($5,000) in cash. · Said purchase-money notes were made for such amounts as would represent the balances regarded as due the legatees respectively, in order that each legatee might receive his or her balance in such notes, secured by mortgage upon the lands, and that the executors might be able to close their trust without waiting for the collection of the notes.  On December 1, 1870, the executors conveyed to *Burnham* the 19.52 acres above mentioned; and the next day, *Burnham* conveyed the same to *Celestia A. O'Dell*.  The consideration of the deed was $350 per acre, amounting to $6,748, which was paid by

the application of that amount by said *Celestia A.* as a payment on her distributive share of the estate; and in the apportionment and distribution of the estate, that sum was treated as a part thereof, and was charged to said *Celestia A.* on account of her share. The total purchase money for all the real property of the estate was $50,401.50; of which, $12,467.50 were used for payment of incumbrances. At the times of the several transactions above mentioned, commencing with the contract of November 24th, the plaintiffs *Reynolds* and *Hewitt* were not present, but were then residing in Minnesota.

The several purchase-money notes given by *Rogers, Burnham* and *Becher* were indorsed and delivered to the respective legatees, as part of their shares under the will; and all the legatees procured their respective notes to be taken up and discounted by the makers before the end of 1871; and thereupon the executors released the mortgage by which the notes were secured. In April, 1871, *Rogers* and *Becher* sold and conveyed to the city of Milwaukee over an acre and a half of the land so conveyed to them; and immediately thereafter the city commenced the erection thereon of a public school-house. During the year 1871, considerable portions of the land were platted by *Rogers, Burnham* and *Becher,* and a number of the lots sold at auction; and during that and the three following years, a great number of small dwellings were erected on said lots by persons who acquired the same at or under said sales; and during the greater part of the time, the plaintiffs *Reynolds* and *Celestia A. O'Dell* lived upon or adjacent to the lands, and they and *George W. O'Dell* had actual knowledge of these improvements. On the 10th of July, 1871, *Celestia A. O'Dell* purchased nine acres of the land from *Rogers, Burnham* and *Becher;* and in 1872–3, she mortgaged the same, with the lands previously conveyed to her as above mentioned, to secure loans of money obtained by her on the faith thereof; and in April, 1874, she sold and conveyed all said lands to one Newkirk, by whom they were afterwards conveyed to *Burnham*

and *Rogers*. All the defendants except *Rogers*, *Burnham* and *Becher* and their wives, and *Mary C. Brewer*, purchased, before the commencement of this action, parts of said real estate from *Rogers*, *Burnham* and *Becher* or their grantees, or have taken and hold mortgages on parts thereof for loans of money made to such purchasers; and said defendants loaned such moneys, or paid the full value of the lands so purchased by them, in good faith, without notice in fact of any fraud or other matter affecting their grantors' title.

On the 21st of August, 1876, *Zeruiah A. Reynolds* and *Emma A. Hewitt* filed their joint petition in the Milwaukee county court in probate, in the matter of said estate, praying to have the probate of the will, and all subsequent orders and proceedings touching the estate, vacated and annulled. The contents of this petition are more fully stated in the opinion, *infra*. On the same day, said petitioners, together with *Celestia A.* and *George W. O'Dell*, commenced the present action in the circuit court, to have the various orders and decrees of the county court in the matter of said estate, and the deeds above described, and the releases annexed to the final decree of the probate court, set aside and declared void. The complaint further prayed that *Burnham*, *Rogers* and *Becher* might be adjudged to execute to the heirs of the estate, or to legally constituted executors or administrators thereof, deeds of conveyance of said estate; that they might be required to account to the heirs for all·property, moneys, etc., which had come into their possession, belonging to the estate or the heirs, and for the rents, issues and profits of said property while in their possession, and to pay and deliver over the same to said heirs or lawfully appointed executors or administrators; that they might also be required to render an account of moneys paid to the plaintiffs, or either of them, on account of said estate, which sum, when ascertained, plaintiffs offered to repay; and there was a further prayer for general equitable relief, etc.

The answer of the defendants *Rogers* and *Burnham* de-

nies all allegations of the complaint charging fraud, abuse of trusts, etc. It then alleges certain of the facts above stated, and others, as an equitable defense, claiming that plaintiffs are precluded from equitable relief by their acts of approval and confirmation, and by long acquiescence and gross laches. It then pleads the same facts and others by way of counterclaim, and prays that their title and that of their grantees may be affirmed and established, and that plaintiffs may be enjoined from setting up any claim to the lands, and from prosecuting their petition in the county court. As to the sale and conveyance of July 28, 1870, it also pleads the statute of limitations. The answer of *Becher* sets up the same defenses, except the statute of limitations. The answers of the other defendants need not be specially noticed.

The facts above stated are such as appear from the record to be undisputed.

The following facts were also found by the court; but exceptions were taken by the plaintiffs. They will sufficiently show the further grounds relied upon by the plaintiffs to sustain the action. The court found that the proceedings taken by the executors for the probate of the will and the issue of letters testamentary, were taken with the knowledge and concurrence of the plaintiff *Reynolds;* that the sale and conveyance of 15½ acres to *Burnham* and *Rogers*, July 28, 1870, were made by the executors with the full knowledge and approval of all the plaintiffs except *Emma A. Hewitt*, who did not know of the same at the time they were made, and that said plaintiffs, with knowledge of the sale and its terms, shortly afterwards accepted portions of the proceeds from the executrix to apply on their shares of the estate; that at the time when the contract of November 24, 1870, between the executors and *Burnham*, was negotiated and made, and for three or four days after its execution, *Burnham* was alone interested therein as purchaser, and had no agreement or understanding that *Rogers* or *Becher* should become in any

manner interested therein, or in any portion of the lands so purchased, and there had been no negotiation between *Burnham* and *Rogers* and *Becher*, or either of them, with reference to the acquisition by the last two, or either of them, of any such interest with or from *Burnham;* that two or three days after said contract was made and delivered, *Celestia A. O'Dell* became desirous to procure for herself a part of the premises so agreed to be sold to *Burnham*, and it was thereupon agreed between them that *Burnham* should sell and convey to her a certain portion of the land included in his said purchase [being 19.52 acres], at the same price per acre ($350), which was stipulated to be paid by *Burnham;* that when the executors and *Burnham* met at the office of *Rogers* and *Becher* on the 29th of November, for the purpose of completing the sale provided for by the contract of November 24th, they (said executors) were informed of *Burnham's* agreement to sell and convey a part of said lands to *Celestia A. O'Dell*, and an interest in the remainder to *Rogers* and *Becher*, and, with full knowledge thereof, freely assented thereto, and the deed then executed by them to *Burnham, Rogers* and *Becher* was made in that form (instead of running to *Burnham* alone) to save the trouble and expense of making and recording a second conveyance; that the eight promissory notes of said grantees for the aggregate sum of $23,722.63 (above described), were made *and delivered* to the executors, on said 29th of November, or the next following day; that at and shortly after the date of such conveyance to them, *Burnham, Rogers* and *Becher* paid $5,000 of the purchase money in cash; that before the execution of said purchase-money notes, the executors caused an account between them and the legatees to be stated; that the deed of conveyance of December 1, 1870, from the executors to *Burnham*, was made pursuant to the contract of November 24th, and that *Burnham* sold said land to *Celestia A. O'Dell;* that of the total consideration paid for all the real property of said estate sold by the executors ($50,401.50),

$1,609.15 were required to pay sundry debts of the estate and costs and expenses of administration; that the remainder of said purchase money (after deducting the sum last mentioned and also the amount of the incumbrances), " being $36,324.85, constituted the net proceeds of the estate, to be divided among the heirs and widow of the deceased;" that the purchase-money notes made as above described by *Rogers*, *Burnham* and *Becher*, added to the amounts ·before received by the several legatees on account of their shares, made up the full amounts to which they were severally entitled; that at the times of the contract of ·November 24, 1870, and of the several conveyances above described, and the making of said purchase-money notes and mortgages, and the settlement of their accounts by the executors with the several legatees, " all parties interested in the estate were present and fully informed thereof, and assented to and approved the action of said executors in that behalf, except the plaintiffs *Reynolds* and *Hewitt*; " that on December 1, 1870, *Mary C. Brewer*, and on March 4, 1871, *George W. O'Dell*, with full knowledge of all the facts connected with said sales, of the terms and conditions thereof, and of the acts of *Rogers* and the executors in respect to the disposition and distribution of the estate, deliberately accepted and received their respective shares, and, for the purpose of acknowledging such receipt and expressing their approval of the acts of the executors, executed to them their receipts or releases above described; that the plaintiffs *Reynolds* and *Hewitt* were, in January, 1871, fully informed by *Celestia A. O'Dell* in regard to the sales and disposition of the estate by the executors; that in March, 1871, said *Reynolds*, and said *Hewitt* accompanied by her husband, Charles L. Hewitt, visited Milwaukee, inquired into and were fully informed of all the circumstances of said sales and disposition of the estate, the terms and conditions thereof, and the disposition made of the proceeds; that said *Reynolds* then caused a thorough examination into the matter of said sales

and the execution of their trusts by the executors to be made by a disinterested attorney, employed by her for that purpose, and received his counsel and advice in regard thereto; that afterwards, in the same month, *Celestia A. O'Dell* and said *Reynolds* and *Hewitt*, together with said Charles L. Hewitt, consulted another disinterested attorney, communicating to him all the facts and circumstances attending said sales, etc., and received his counsel and advice in regard thereto; that said *Reynolds*, after such consultation and advice, with full knowledge of the facts and of her legal rights in the premises, on the 27th of March, 1871, deliberately and voluntarily received and accepted her distributive share of the estate, being proceeds of said sales, and, for the purpose of acknowledging such receipt and expressing her approval and ratification of such sales, etc., gave her receipt and release of that date, above described; that said *Hewitt*, also, after such consultation and advice, and with full knowledge, etc., on the 31st of March, 1871, procured her husband to be appointed her general guardian by said county court, and caused her distributive share of the estate to be paid over to him for her, and both she and her said guardian, on that day, for the purpose of acknowledging the receipt thereof and expressing their approval and ratification of such sales, etc., gave the receipts or releases of that date signed by them respectively, as above described; that with the same purpose of approving said sales, etc., and especially of ratifying and confirming the title of *Celestia A. O'Dell* to the portion of said estate conveyed to her, the plaintiffs *Reynolds*, *Hewitt* and *George W. O'Dell*, and the defendant *Mary C. Brewer*, in March and April, 1871, executed and delivered to said *Celestia* their quitclaim deed of the said land, with full knowledge of the facts attending the making of the deeds of said land from the executors to *Burnham*, and from *Burnham* to *Celestia A. O'Dell*, and of the consideration thereof, and said quitclaim deed was made at the request of the said *Celestia*, with intent to confirm her title to the

land; and that the purchase of said lands by *Burnham*, and his several sales and transfers thereof to *Celestia A. O'Dell* and to *Rogers* and *Becher*, were made fairly, in good faith, and the price per acre paid upon such sales was the full and fair average value of the lands so purchased and conveyed.

The court further found that it *is not true, as charged in the complaint*, that *Rogers* was attorney and counselor of the plaintiffs *Reynolds* and *Hewitt* in the matter of said estate and its settlement; or that, as attorney for the executors and heirs, he took entire control of the estate, or of its settlement and administration; or that he made any sales thereof; or that he took entire management and control of the estate and its proceeds, to the exclusion of the heirs and executors; or that he represented to or advised *Celestia A. O'Dell* that the executors could not act beyond one year from the decease of their testator, or that after that time their authority would cease, or that they were obliged to convert and distribute the entire estate within said year; or that he represented to her that the estate had been appraised at $500 per acre, or that it was necessary to have it appraised low so that the executors could give bonds; or that *Celestia A.* or *George W. O'Dell* believed or acted upon such representations; or that *Rogers*, as attorney for the executors and heirs, or either of them, made the sale of fifteen and a half acres of said land to himself and *Burnham;* or that the executors conveyed said land to them by his advice and direction; or that said land was worth $10,-000; or that *Rogers* advised said sale, or induced the making of the deed thereon, for the purpose of getting title himself, or without paying full value therefor, or took any advantage of the heirs in the purchase or in obtaining a deed for said fifteen and a half acres, or in any way abused the trust and confidence reposed in him as attorney in the matter of said purchase; or that he retained any sum as a fee for selling said parcel to himself and *Burnham;* or that he kept the remainder of the proceeds after paying off the mortgages, and refused

to pay it to the heirs, or to the executors; or that he refused to pay them money in his hands, for the payment of interest, or required the executors or heirs to borrow it of him and pay him interest therefor; or that, as attorney for the heirs or otherwise, he made the sale of 102.64 acres to himself, *Burnham* and *Becher;* or that said tract was worth, November 29, 1870, $71,000, or more than $35,924; or that he falsely represented to *Celestia A. O'Dell*, at the time of such sale, that it had been made to *Burnham* alone, or concealed from her or the other heirs any fact in relation to the sale or his interest in it, or made any representation to her as to the value of the tract, or counseled or advised the executors or either of them to make a deed thereof to himself, *Burnham* and *Becher;* or that said *Celestia* refused to make such deed on account of being deceived as to the interest of *Rogers*, or that he told her that she could or would be compelled to make such deed, or would be imprisoned by order of some court if she did not make it; or that she demanded of *Rogers* said contract of sale; or that he refused to deliver it to her or to rescind it; or that she and *George W. O'Dell*, or either of them, made said deed by reason of any threat used by *Rogers*, or believing that she was without redress for any wrong or injury, or influenced by any threats of imprisonment or promises of any kind; or that *Rogers* agreed to reserve out of said tract, or to so draw the deed as to reserve out of it, any part of said 102.64 acres, or represented that he had so drawn the deed; or that she believed, when she signed the deed, that such reservations were made therein; or that *Rogers* promised her, to induce her to sign the said deed, that she should have the remainder of the land belonging to the estate for $6,748 on account of her distributive share of the estate; or that he induced the executors to sign a deed thereof; or that the deeds thereof from said executors to *Burnham*, and from him to said *Celestia*, were without consideration, or were used as a device to convey the title from the estate and heirs to her, as an inducement for her

to sign said deed to *Rogers, Burnham* and *Becher*, for an inadequate consideration; or that *Rogers, Burnham* and *Becher* conspired together to obtain said land without paying full value for it, or to defraud the estate and heirs of the same; or that *George W. O'Dell* acted wholly by the advice, counsel and direction of *Rogers;* or that *Rogers* never accounted to the executors or heirs for the money arising from said sales, or for moneys received and expended by him in that behalf; or that he never exhibited an itemized statement of account; or that the plaintiffs were or are ignorant of the amounts of moneys received or paid out by him for said estate; or that he never paid to the heirs the full shares apportioned to them respectively; or that he represented to the heirs, or any of them, that the estate could not be settled, or that they could not receive their respective shares, until they should make a deed of said 19.52 acres to *Celestia A. O'Dell;* or that they or either of them made such deed in consequence of any deception or imposition upon them by *Rogers*, or of any false advice given them by him as to the law or their rights; or that he represented to said heirs, or either of them, that they were required by said county court to sign the releases signed by them respectively in March, 1871, or that they could or would be compelled to sign the same; or that said releases were obtained by fraud, imposition or undue influence, or false representations, on the part of *Rogers;* or that he had been guilty of any fraudulent practice, or had taken any fraudulent or unfair advantage of the plaintiffs, or either of them, while acting as their attorney in the matter of said sales and conveyances and the settlement of said estate.

Upon these facts, the court held that none of the plaintiffs were entitled to the relief sought, or any relief; that defendants *Burnham, Rogers* and *Becher* were entitled to a judgment establishing in them, their heirs and assigns, title in fee to all of said real estate, and barring the plaintiffs from any claim of title thereto or interest therein, in law or equity, and

forever restraining plaintiffs and all persons claiming under them from asserting any title to or interest in the said real estate as against said defendants or persons claiming under them; that defendants *Rogers, Burnham, Becher*, and the *City of Milwaukee*, were also entitled to judgment restraining the plaintiffs *Reynolds* and *Hewitt*, their agents, etc., from prosecuting their petition aforesaid in said county court, or any other proceeding in probate in the matter of said estate, to vacate the order admitting the will to probate or any other order or proceeding in the matter of said estate; and that certain other defendants were entitled to judgment dismissing the complaint as against them.

Judgment was rendered in accordance with these conclusions; from which the plaintiffs appealed.

The cause was argued at the August term, 1877, by *J. C. McKenney* for the appellants, and by *L. S. Dixon* and *Joshua Stark* for the respondents; and was reargued, by order of the court, at the January term, 1878, by *Mr. McKenney* and *George B. Goodwin* for the appellants, and by *Mr. Dixon* and *Mr. Stark* for the respondents. There were separate briefs for the appellants by *Mr. McKenney* and *Murphey & Goodwin*. For the respondent there was a general brief signed by *Mr. Stark* and *Mr. Dixon,* and separate briefs by each of them.

For the appellants it was argued, 1. That the court erred in various rulings respecting the admission of evidence, which will appear from the opinion. 2. That the publication of notice of the hearing of the application for probate was insufficient (Tay. Stats., 1206, § 18; *Sibley v. Waffle*, 16 N. Y., 180; *Eaton v. Lyman*, 33 Wis., 34; *Chase v. Ross*, 36 id., 267; *McCrubb v. Bray*, id., 333; *Mohr v. Tulip*, 40 id., 66); and the county court never acquired jurisdiction. Tay. Stats., 1206, § 18; *Smith v. Rice*, 11 Mass., 507; *Gay v. Minot*, 3 Cush., 352; *Bloom v. Burdick*, 1 Hill, 130; *Denning v. Corwin*, 11 Wend., 647; *Ford v. Walsworth*, 15 id., 449; *Dakin*

*v. Hudson*, 6 Cow., 221; *Corwin v. Merritt*, 3 Barb., 341; *Schneider v. McFarland*, 2 Coms., 459; *Falkner v. Guild*, 10 Wis., 563; *Stark v. Brown*, 12 id., 572; *Pollard v. Wegener*, 13 id., 569; *Sitzman v. Pacquette*, id., 291; *Ely v. Tallman*, 14 id., 28; *Gibbs v. Shaw*, 17 id., 197; *Bresee v. Stiles*, 22 id., 120; *Blodgett v. Hitt*, 29 id., 169; *Ruth v. Oberbrunner*, 40 id., 238; and the cases cited above. The order of probate, being absolutely void, could not be rendered valid by voluntary appearance or consent or otherwise. Broom's Philosophy of Law, 46; *Shæfer v. Gates*, 2 B. Mon., 453; *Gay v. Minot, supra; Callis v. Day*, 38 Wis., 646. The petition filed in the county court for vacating its orders and decree is not a submission by the petitioners to its jurisdiction, rendering valid its former proceedings. They ask no relief inconsistent with an utter want of jurisdiction in that court. *Blackburn v. Sweet*, 38 Wis., 578. 3. That under our statute (Tay Stats., 1207, § 21), the will never having been duly proved and allowed, the real estate of the testator has not passed to any person under it. It is therefore competent for the county court to grant the relief asked, and it should not be restrained from doing so. *Proctor v. Wanmaker*, 1 Barb. Ch., 302; *Pew v. Hastings*, id., 452; *Sipperly v. Baucus*, 24 N. Y., 46; *Roy v. Segrist*, 19 Ala., 810; *Lawrence's Will*, 7 N. J. Eq., 215; *In re Fisher*, 15 Wis., 511; *Archer v. Meadows*, 33 id., 166. 4. That *Mrs. Hewitt*, having been a minor during all the proceedings, and having done no act confirming them since becoming of age, may disaffirm them all within a reasonable time. Tyler on Infancy, etc., 84; *Ackley v. Dygert*, 33 Barb., 176; *Wilkinson v. Filby*, 24 Wis., 441; *Mohr v. Tulip, supra*. Upon the question of her minority, the laws of this state govern. Schouler's Dom. Rel., 520; *Hiestand v. Kuns*, 8 Blackf., 345. 5. That the three deeds from the executors conveying away the entire estate, and the deed from *Burnham* back to *Mrs. O'Dell*, are voidable at the election of the appellants: (1) Because the will was

never proved, and the executors acted wholly without authority. (2) Because *Rogers* was acting at the time as the attorney for the executors. The pretended sale to *Mrs. O'Dell* is absolutely void by statute (Tay. Stats., 1187, § 27), and would unquestionably be voidable, without regard to its fairness, independently of the statute. What is the rule with reference to the purchases made by *Rogers* jointly with *Burnham* and *Becher?* (a) "Where a trustee buys from or contracts with himself, or several trustees of whom he is one, * * * the contract is voidable absolutely at the instance of the *cestui que trust*, without regard to its fairness." This rule is not confined to trustees properly so called; it includes executors, administrators, assignees in bankruptcy, guardians and others. Kerr on F. and M., 155 n., 160, 161. It applies in this case to the attorney of the executors. *Ex parte James*, 8 Ves., 337, 345– 6, 348, 351; *Hawley v. Cramer*, 4 Cow., 717, 734; *In re Taylor Orphan Asylum*, 36 Wis., 534, 550, 552. (b) "Where the dealing of the trustee is with a *cestui que trust* who is *sui juris*, and competent to deal independently of the trustee in respect to the trust estate, * * * although the presumptions of law are against the contract, yet permission is given the trustee to show the perfect *bona fides* of the transaction, and circumstances relieving it from the censure of the law." Some of the cases, however, insist that this class of cases should be governed by the same principle as the former. Kerr, *ubi supra*. If it be held that this is the rule applicable to the attorney here, still he did not establish affirmatively that the purchase was fair and above suspicion. Even if the purchases had been made by the attorney from a client who held the property in his own right, they could not be sustained under the principle here stated. Kerr, 165; Hill on Trustees, 156– 9, 162; Story's Eq. Jur., §§ 308–324; 2 Ves., 547; *Gibson v. Jeyes*, 6 id., 266; *Morse v. Royal*, 12 id., 355; *Huguenin v. Baseley*, 14 id., 273; *Wood v. Downes*, 18 id., 120; 1 Cox, 112–143; 1 Ball & B., 99; *Dent v. Bennett*, 7 Sim., 539;

*Bulkley v. Wilford*, 2 Clark & Fin., 102, 177–181; *Holman v. Loynes*, 4 DeG., M. & G., 270; *Casborne v. Barsham*, 2 Beav., 76; *Davoue v. Fanning*, 2 Johns. Ch., 252; *Howell v. Ransom*, 11 Paige, 538; *Brown v. Post*, 1 Hun, 303; *S. C.*, 62 N. Y., 651; *Sears v. Shafer*, 6 id., 268; *Galbraith v. Elder*, 8 Watts, 94; *Leisenring v. Black*, 5 id., 303; *Cleavinger v. Reimar*, 3 W. & S., 486; *Greenfield's Estate*, 14 Pa. St., 489; *Henry v. Raiman*, 25 id., 354; *Mills v. Mills*, 26 Conn., 213; *Jennings v. McConnell*, 17 Ill., 148; *Uhlich v. Muhlke*, 61 id., 499, 534; *Gray v. Emmons*, 7 Mich., 533; *Clay v. Hoysrädt*, 8 Kans., 74; *Valentine v. Stewart*, 15 Cal., 387; *Taylor Orphan Asylum, supra*, and cases there cited; *Cook v. Berlin Woolen Mills*, 43 Wis., 433. Counsel examined the evidence at length to show that *Rogers* had not brought himself within this rule. To the point that where the accounts as to advances and payments by the attorney are confused, the burden of proof is upon the attorney, they cited Kerr on F. and M., 166; *Lewes v. Morgan*, 5 Price, 42. (c) *Burnham* and *Becher*, having joined *Rogers* in the purchase with full knowledge of his relations to the estate, are affected by his incapacity. *Hoffman Steam Coal Co. v. Cumberland Co.*, 16 Md., 456; *Howell v. Baker*, 4 Johns. Ch., 118. 6. That the appellants were not precluded from relief in equity by their delay in seeking such relief, nor by any acts of confirmation. (1) Not by delay in bringing suit. The statute (Tay. Stats., 1625, § 17) limits actions for relief on the ground of fraud to six years from discovery of the facts constituting the fraud; and that statute is applicable to this action. *McMahon v. McGraw*, 26 Wis., 614. The party aggrieved has an absolute right to bring the action at any time within the six years. *Ward v. Smith*, 3 Sandf. Ch., 592; *Sears v. Shafer*, 6 N. Y., 268; *Foot v. Farrington*, 41 id., 164; *Erickson v. Quinn*, 47 id., 410; *Potter v. Smith*, 36 Ind., 231. In the case of minors and married women, the statute did not run. Tay. Stats., 1627, § 29; *Wiesner v. Zaun*, 39 Wis., 188. But apart from the

statute there has been no laches such as to create an estoppel. *Gresley v. Mousley*, 4 DeG. & J., 78; *Hall v. Hallett*, 1 Cox Ch., 134; *Prevost v. Gratz*, 6 Wheat., 481; *Michoud v. Girod*, 4 How., U. S., 503, 561; *Drury v. Foster*, 2 Wall., 24; *Pierrepont v. Barnard*, 5 Barb., 364; *Lounsbury v. Depew*, 28 id., 44; *Miles v. Lingerman*, 24 Ind., 385; *Baines v. Burbridge*, 15 La. An., 628; 5 id., 586; *Morrison v. Wilson*, 13 Cal., 494; *Mohr v. Tulip, supra;* Bigelow on Estoppel, 474 et seq. (2) None by acts of confirmation. As to *Mrs. Hewitt*, all acts done by her were during her minority. *Mrs. Reynolds* testifies that *Rogers* refused to give her her notes until she signed the release; that she supposed the land was all sold; that she did not then commence suit because she had no money to do it; that she had no money at all; and that she was forced to accede to the bargain. *George W. O'Dell* testifies that he signed the release because *Rogers* asked him to do so, and that he could not read it. The court would not allow him to say whether he would have signed it if he had known that the sales could be broken up. *Mrs. O'Dell* refused to sign such a release. The releases executed all recite the receipt of $6,057.97 by each heir; and these recitals are untrue in every instance. *Rogers* never advised these parties, as it was his duty to do, that the sales were impeachable. As to the quitclaim deed from the heirs to *Mrs. O'Dell* for 19½ acres, all the signers deny that it was voluntarily made, or with knowledge of its object or effect. To constitute a valid confirmation, the person to be bound must be aware that the act he is doing will have the effect of confirming an impeachable transaction. And the act of confirmation will not be valid if done in distress and difficulty, under the pressure and influence of the former transaction. 1 Lead. Cas. in Eq., 175. No act is a confirmation of a transaction, if done while laboring under its effects ( *Wood v. Downes*, 18 Ves., 120; *Wright v. Proud*, 13 id., 136); nor if done under an idea that the old instrument may be enforced; nor if the party be poor or distressed. *Crowe v. Ballard*, 1 Ves., Jr.,

215; *S. C.*, 2 Cox Ch., 253. Acquiescence does not go for anything during the continuance of the same situation. *Gowland v. De Faria*, 17 Ves., 20. In *Purcell v. M'Namara*, 14 id., 91, deeds were set aside and an accounting ordered after fourteen years, for various reasons, among others the confidential relations of the parties; and acts done under the same influence and control as brought about the first conveyances were held no confirmation. In *Wiseman v. Beake*, 2 Vernon, 121, such pretended confirmations are spoken of as contrivances to *double-hatch* the cheat; and in *Uhlich v. Muhlke*, *supra*, THORNTON, J., speaking of the original fraudulent transactions and the instruments relied upon as confirmations, says: "They emanated from the same brain; were nurtured and produced under the same influences; were for the same illegal purpose — to grasp possession of the estate." A party may be relieved from an instrument executed under a mistake of law, where the party benefited cannot in conscience retain the benefit. Kerr on F. & M., 398. Equity will grant relief where there is a marked disparity between the parties in position and intelligence, though both acted under a mistake in the law. "And there would be still stronger reasons for granting relief in such a case, if the party from whom the property had been obtained, had been led into his mistake of the law by the other party." *Jordan v. Stevens*, 51 Me., 78; *Green v. Railroad Co.*, 1 Beasley, 165. As to the effect of the statement of an untrue consideration in a deed between attorney and client, or any suppression of truth or suggestion of falsehood in the transaction, they cited Kerr on F. & M., 167; *Taylour v. Rochfort*, 2 Ves., Sr., 281; *Broderick v. Broderick*, 1 P. Wms., 239; and on the general subject of confirmation or condonation of fraud in such cases, they cited further, *Cole v. Gibson*, 1 Ves., Sr., 503; *Morse v. Royal*, 12 Ves., Jr., 355, 373; *Beaumont v. Boultbee*, 5 id., 485; *Moxon v. Payne*, L. R., 8 Ch. App., 881 (7 Eng., 442); *Miles v. Wheeler*, 43 Ill., 123; *Hoffman Steam Coal Co. v. Cumberland*

*Co.*, *Michoud v. Girod*, and *Mohr v. Tulip*, *supra*.   7. That the relief demanded was the appropriate relief.   *Hawley v. Cramer*, 4 Cow., 744; *Davoue v. Fanning*, 2 Johns. Ch., 252; *Bassett v. Warner*, 23 Wis., 673.

For the respondents it was argued, among other things, 1. That plaintiffs were not entitled to the relief sought by reason of the alleged want of jurisdiction of the county court to admit the will to probate.   (1) The death of the testator at the city of Milwaukee, owning real estate in Milwaukee county, gave the court jurisdiction of the subject matter.   R. S. 1858, ch. 117, secs. 5, 6; *Reynolds v. Schmidt*, 20 Wis., 380, 400; *Wanzer v. Howland*, 10 id., 8, 13; *Damp v. Town of Dane*, 29 id., 419, 431; Redfield's L. & Pr. of the Sur. Cts., 12.   (2) The probate of a will as to the subject matter is a proceeding *in rem*, but as to the parties interested it is *his inter partes*.   *Brush v. Holland*, 3 Bradf., 240.   The same acts which in civil actions are held to waive or cure defects of service and to confer jurisdiction of the parties, will work the same result in matters of probate.   Redf., 13: *Abila v. Padilla*, 14 Cal., 103; *Potter v. Adams' Ex'rs*, 24 Mo., 159; *Everts v. Everts*, 62 Barb., 577, 581.   The appearance of the parties at the time and place of hearing without objecting to the proceedings for want of statutory notice, confers jurisdiction of their persons.   *State v. Richmond*, 26 N. H., 232; *Barnum v. Fitzpatrick*, 11 Wis., 81; *Upper Miss. Trans. Co. v. Whittaker*, 16 id., 220; *Northrup v. Shephard*, 26 id., 220; *Klaise v. The State*, 27 id., 462; *Grantier v. Rosecrance*, id., 488; *Anderson v. Coburn*, id., 558; *Baizer v. Lasch*, 28 id., 268; *Ins. Co. of N. A. v. Swineford*, id., 263; *Damp v. Town of Dane*, 29 id., 419; *Alderson v. White*, 32 id., 308; *Blackburn v. Sweet*, 38 id., 578; *Coad v. Coad*, 41 id., 23. *Mrs. O'Dell* and *George W. O'Dell* appeared in person at the hearing.   The complaint alleges that *Rogers* was the attorney of all the plaintiffs in all these proceedings; and appearance by attorney is sufficient.   *Warren v. Glynn*, 37 N. H., 340;

*McCormick v. Railroad Co.*, 49 N. Y., 303; *Danforth v. Thompson*, 34 Iowa, 243; *McNorton v. Robeson*, 9 Ired., 250. (3) The supposed defect of jurisdiction as to *Reynolds* and *Hewitt* was cured by their petition filed in that court August 14, 1876, in which they sought to have all the proceedings of that court in the matter of said estate set aside, not only on the ground that the court had failed to acquire jurisdiction, but also for alleged frauds on the part of the executors and others in the execution of the trust created by the will, etc. *Anderson v. Coburn, supra.* (4) Mere want of jurisdiction in the county court to make its former orders and decrees would not entitle plaintiffs to the relief here sought, in equity. The county court has exclusive jurisdiction of the probate of wills, and is competent to set aside its own orders and decrees. *Archer v. Meadows*, 33 Wis., 166. 2. That the other facts in evidence did not entitle plaintiffs to have the sales made by the executors set aside. (1) A purchase by attorney or trustee, of the trust estate, is not void, but is voidable only at the election of the *cestui que trust*, if exercised within a reasonable time. Willard's Eq., 186, 187; Tiffany & Bullard on Trustees, 146; 1 Lead. Cas. in Eq. (last ed.), Part 1, pp. 256, 257, and cases cited; *Fox v. Mackreth*, 1 L. Cas. in Eq. (4th Am. ed.), 188, 208, 217; *Davoue v. Fanning*, 2 Johns. Ch., 257; *Bruch v. Lantz*, 2 Rawle, 392, 417, 418; *Harrington v. Brown*, 5 Pick., 519; *Kisling v. Shaw*, 33 Cal., 425. This doctrine applies to a purchase by an attorney or trustee, at his own sale. Willard's Eq., 189. (2) An attorney is under no positive incapacity to purchase from his client. When he buys from his client that in respect to which he is attorney, the burden is on him to prove that the transaction was open and fair. Willard's Eq., 172, 175; Story's Eq. Jur., §§ 308–324; Smith's Manual of Eq., 78–81, 310–313, and cases cited; *Fox v. Mackreth*, 1 L. C. in Eq., 220; *Pearson v. Benson*, 28 Beav., 598; *Waters v. Thorn*, 22 id., 547; *Spencer v. Topham,* id., 573; *Holman v. Loynes*, 4 DeG., M.

& G., 270; *Tomson v. Judge*, 3 Drewry, 306; *Savery v. King*, 5 H. L. Cas., 627; *Gibbs v. Daniel*, 4 Giff., 1; *Cowdry v. Day*, 1 id., 316; *Gresley v. Mousley*, id., 450. In respect of transactions not in litigation, the law will not *imply* undue influence from the mere relation of attorney and client. In such cases more must be shown — fraud or imposition, gross disproportion between value and price, or some appearance of overbearing influence on the one side and tame submission on the other. Willard's Eq., 174; *Wendell v. Van Rensselaer*, 1 Johns. Ch., 350; *Bibb v. Smith*, 1 Dana, 582. (3) Equity will not relieve a *cestui que trust*, who, with full knowledge of the misconduct of a trustee, has for a long time either acquiesced in it or slept on his rights. Tiffany & Bull. on Trustees, 146, 148; *Hubbard v. Cummings*, 1 Greenl., 11, 14; *Lawson v. Lovejoy*, 8 id., 405; *Jones v. Emery*, 40 N. H., 348; *Bassett v. Brown*, 105 Mass., 551; *Arnold v. Iron Works*, 1 Gray, 434; *Allis v. Billings*, 6 Met., 415; *Kline v. Beebe*, 6 Conn., 494; *The Matteawan Co. v. Bentley*, 13 Barb., 641; *Wheaton v. Baker*, 14 id., 594; *Roof v. Stafford*, 7 Cow., 179; *Masson v. Bovet*, 1 Denio, 69; *Delano v. Blake*, 11 Wend., 85; *Negley v. Lindsay*, 67 Pa. St., 217; *Pearsoll v. Chapin*, 44 id., 9; *Andrews v. Hobson*, 23 Ala., 219; *Vance v. Crawford*, 4 Ga., 457; *Jones v. Smith*, 33 Miss., 215; *Follansbe v. Kilbreth*, 17 Ill., 522; *Williams v. Ketchum*, 21 Wis., 432; *Marsh v. Whitmore*, 21 Wall., 178; *Kiely v. McGlynn*, id., 503. (4) Inadequacy of price must be gross, amounting to fraud, to constitute ground for relief in equity. Story's Eq. Jur., §§ 244–250; *Booker v. Anderson*, 35 Ill., 66; *Kuelkamp v. Hidding*, 31 Wis., 503, 511. (5) Any clear, deliberate act of ratification by the beneficiary, with full knowledge of the facts, will bind him and bar all claim to relief. Willard's Eq., 169; Kerr on F. & M., 296 et seq.; *Kempson v. Ashbee*, L. R., 10 Ch. App., 15; *Parsons v. Hughes*, 9 Paige, 591; *Dunlap v. Mitchell*, 10 Ohio, 117; *Faucett v. Faucett*, 1 Bush, 511; *Bassett v. Brown*, *supra*. No new consideration

is necessary. *Negley v. Lindsay, supra.* Receipt of the proceeds of the sales, as such, after the fullest knowledge, is such a ratification. *Anderson v. Mather*, 44 N. Y., 249, 261. The doctrine of equitable estoppel by election has become elementary. *Blodgett v. Hitt*, 29 Wis., 191; *Arnold v. Iron Works Co., supra; Clough v. Railway Co.*, L. R., 7 Exch., 26. The receipt, by the owner, of the damages awarded for his land taken for a highway, is a conclusive waiver of all irregularities. *Burns v. Railroad Co.*, 9 Wis., 450; *Karber v. Nellis*, 22 id., 215; *State v. Langer*, 29 id., 68. The receipt, by a judgment creditor, of the amount of his judgment, out of the proceeds of a sheriff's sale, bars him from afterwards procuring the sale to be set aside. *Stroble v. Smith*, 8 Watts, 280; *Adlum v. Yard*, 1 Rawle, 171. Acceptance, by the mortgagor, of the surplus proceeds of a foreclosure sale, estops him from showing invalidity of service. *Southard v. Perry*, 21 Iowa, 488. Receipt of purchase money affirms the sale of lands, whether void or voidable. *Maple v. Kussart*, 53 Pa. St., 348; *Smith v. Warden*, 19 id., 426; *State ex rel., etc., v. Stanley*, 14 Ind., 409–412. An heir, receiving, after majority, proceeds of an unauthorized sale by administrator with the will annexed, is barred from denying the purchaser's title. *Deford v. Mercer*, 24 Iowa, 118, and cases cited in note; *In re Place*, 5 Bradf., 278. A minor, settling with his guardian after majority, and receiving proceeds of estate sold, as such, is estopped. *Corwin v. Shoup*, 76 Ill., 246; *Pursley v. Hays*, 17 Iowa, 310; *Scott v. Searles*, 7 Sm. & M., 499. Where minor heirs, after majority, with full knowledge of the facts, received their proportion of the proceeds of a sale of lands in partition, they were held estopped from asserting title to the lands sold, and from denying the validity of the sale *on any ground. Penn v. Heisey*, 19 Ill., 295; *Walker v. Mulvean*, 76 id., 18. (6) One seeking to rescind for fraud must do so promptly on discovery of the facts. By delay, or further steps in execution of the contract, or acts recognizing its val-

idity, after discovery, he loses all right to equitable relief. 1 Story's Eq. Jur., 203 a; Bigelow on Estoppel, 578, and cases cited; 2 Parsons on Con., 780–82; Kerr on F. and M., 298; *Bassett v. Brown, Clough v. Railway Co., Jones v. Smith, Kiely v. McGlynn,* and *Vance v. Crawford, supra; Grymes v. Sanders,* 93 U. S., 55; *Woodruff v. Garner,* 39 Ind., 246; *Weaver v. Carpenter,* 42 Iowa, 343; *Pairo v. Vickery,* 37 Md., 467; *Edwards v. Roberts,* 7 Sm. & M., 544; *Hanson v. Field,* 41 Miss., 712; *Akerly v. Vilas,* 21 Wis., 88; *Williams v. Ketchum,* id., 432; *Holden v. Meadows,* 31 id., 284, 290–3; *Booth v. Ryan,* id., 45, 49; *Grannis v. Hooker,* id., 474; *In re Holden,* 37 id., 98; *Reed v. Lucps,* 38 id., 352, 355. (7) The deed of *Burnham* to *Celestia A. O'Dell,* of December 2, 1870, conveyed to her a good title. Assuming that the written contract between *Burnham* and the executors was fairly made and binding on the parties, and made without agreement or understanding at the time, direct or indirect, that *Mrs. O'Dell* should acquire any interest through or under *Burnham,* the purchaser, it was competent for *Burnham,* the sole purchaser, in good faith, thereafter to sell to any one, even to the executrix, any share or portion of the property he had so purchased. Even a *parol* sale of real property by executors, partly executed by possession, is held to pass an equitable interest to the vendee, of which one of the executors may become the purchaser for himself, provided there was no *mala fides* in the original sale. *Silverthorn v. McKinster,* 12 Pa. St., 67; *Watson v. Sherman,* 84 Ill., 263. And the validity of such subsequent purchase by the executor is not affected by the fact that the consideration is paid by him in whole or in part with notes of the original vendee, given to and held by the executors for the purchase money of the land. *Silverthorn v. McKinster, supra.* (8) The same doctrine applies also to the purchase by *Rogers* and *Becher* from *Burnham,* negotiated and made after his contract with the executors. (9) The executors, *Celestia A.* and *George W. O'Dell,* are estopped by their deeds

JANUARY TERM, 1878. 165

O'Dell and others vs. Rogers and others.

as executors to deny their authority to convey, or to challenge the validity of the title of their grantees under such deeds, except for fraud on them. *Stow v. Wyse*, 7 Conn., 214; *Potter v. Adams' Ex'rs*, 24 Mo., 159. (10) *Mrs. O'Dell* is barred of relief as to the sale of November, 1870, on her own showing, by the principle that where two or more persons engage in a fraudulent transaction to injure another, neither law nor equity will relieve them as against each other from the consequences. *Stewart v. Ackley*, 52 Barb., 283; *Bolt v. Rogers*, 3 Paige, 154. (11) To constitute actual fraud, in its legal or equitable sense, the acts charged must result in loss or damage to another. Story's Eq. Jur., §§ 187, 203; 2 Parsons on Con., 771; *Ableman v. Roth*, 12 Wis., 81, 90; *Castleman v. Griffin*, 13 id., 535; *Barber v. Kilbourn*, 16 id., 492, 517. (12) In order to entitle a party to relief on the ground of fraud, it must appear that he confided in and trusted to the false and fraudulent representations, and acted upon them, and did not act upon information previously acquired from others, or upon knowledge or advice derived from independent sources. Kerr on F. & M., 297, 298; *Smith v. Mariner*, 5 Wis., 551; *Miner v. Medbury*, 6 id., 295; *Bowman v. Page*, 11 id., 301; *Kuelkamp v. Hidding, supra*. 3. That the plaintiff *Mrs. Hewitt* was estopped, as well as the other plaintiffs. (1) She was not a minor when she received her share of the estate, in March, 1871. Upon marriage, her domicile merged in that of her husband (Wharton on Conf. of Laws, § 43), and by the law of Minnesota she became *sui juris* at the age of eighteen (October 17, 1870), and was competent to deal for herself with the executors in respect to her interest in the estate. She was a mere legatee, having no interest in the real estate as such. The executors might properly have paid over her share to her, and a guardian was unnecessary. There have been great conflict and confusion among writers on the civil law as to the rule by which the validity of contracts, depending on the age of the contracting parties, should be determined. Story's

Conflict of Laws, ch. IV.   Many of the ablest writers main-
tain that majority in the place of actual domicile is a per-
sonal quality or capacity, which accompanies the person every-
where.   Others hold that the *lex loci contractus aut actus*
generally governs.   The supreme court of Louisiana have held
that a foreign major does not lose his majority on visiting a
country in which by the local law he is a minor.   *Saul v. His
Creditors*, 5 Martin, N. S., 569.   That case sustains the prin-
ciple that, " where there are two conflicting domiciles as to
capacity, that will be selected which most favors a contract
entered into by the person whose capacity is disputed;" and
the doctrine of that case " now obtains throughout the German
Empire, and may be regarded as the law both in England and
the United States."   Wharton's Conflict of Laws, §§ 114, 115.
See also 3 Parsons on Con. (5th ed.), 575; *In re Hellmann*,
L. R., 2 Eq. Cas., 363.   (2) Even if she was a minor, payment
to her general guardian was payment to her.   He was author-
ized to receive and receipt for her share; and his acts, done in
good faith and not impeachable for fraud, bound and barred
her as if they had been her own after majority.   Ewell's L. C.,
232–4; see also *Metcalf v. Lomax* (in the Sup. Ct. of Alabama,
December, 1876), 4 Cent. L. J., 78.   (3) She was barred by
her own acts, in 1871 and later, done in Minnesota, viz., in
procuring and accepting payment there of $5,000 from defend-
ants, upon their purchase-money note, held by her as her share
in part of the proceeds of the lands sold; and in investing that
sum in lands in her own name, in the erection of a dwelling in
that state, and in various purchases and loans there made.
These were all the acts, not of a minor, but of a person of full
age for all purposes; and they were a clear affirmance of the
sales and settlement of the estate.   Her title to and control
over her separate property was fully secured by the laws of
Minnesota.   Her coverture did not qualify her power to con-
tract, except in the conveyance of her real estate; and in re-
spect to all subjects except her real estate, she could constitute

her husband her agent, and could contract with him, as fully as though the relation of husband and wife did not exist. Gen. Laws of Minn. of 1869, ch. 56, secs. 1, 2 and 4. (4) And finally she was barred by keeping silence for nearly six years after her majority there,- and for nearly three years after she had reached the age of twenty-one, with full knowledge of the facts concerning the sales, and also of the fact that defendants were platting, improving and selling the lands. A minor must disaffirm his contracts within a reasonable time after attaining majority. If he acts so as to indicate plainly his intent to affirm, or delays long after his disability is removed, he is barred. Ewell's L. C., 158–160; *Emmons v. Murray*, 16 N. H., 385; *Pursley v. Hays*, *Penn v. Heisey*, *Walker v. Mulvean*, and *Corwin v. Shoup*, *supra; Ferguson v. Bell's Adm'r*, 17 Mo., 347; *Baker v. Kennett*, 54 id., 88; *Hoyle v. Stowe*, 2 Dev. & Bat., 320; *Wheaton v. East*, 5 Yerg., 62. Estoppel by receipt of proceeds after majority applies as well to void as to voidable sales. *Deford v. Mercer*, *supra; Nelson's Heirs v. Lee*, 10 B. Mon., 502. Affirmance by an infant may be inferred from any act totally inconsistent with an intention to disaffirm. 56 Mo., 202, 211; *Callis v. Day*, 38 Wis., 643. In *Summers v. Wilson*, 2 Cold. (Tenn.), 469, acquiescence by a minor for more than three years after her majority, in the sale of a slave during her minority, *held* to estop her from disputing the validity of the sale. Continuing in possession and selling with warranty, after reaching full age, affirms the contract of a minor. *Lynde v. Budd*, 2 Paige, 191. 4. That in fact the sales were fair, made for full · value, and without fraud. Counsel argued this point at great length upon the evidence.

ORTON, J. The publication of notice of the time and place of proving the will of Galutia O'Dell was clearly insufficient. The statute, sec. 18, ch. 97, R. S., provides, that the county court shall appoint a time and place for proving a will, "when

O'Dell and others vs. Rogers and others.

all concerned may appear and contest the probate " thereof, and " shall cause public notice thereof to be given by personal service on all persons interested, or by publication, under an order of such court, in such newspaper printed in this state as the judge shall direct, three weeks successively previous to the time appointed; and no will shall be proved until notice shall be given as herein provided." By this language the object and purpose of the notice are, that all persons interested may appear and contest the validity and probate of the will; and if such notice is not given, and any party interested does not appear or otherwise consent to the proceedings, as to such party, at least, they are invalid..

The object of such notice, and the consequences of a failure to give the proper notice, are expressed or clearly implied by the statute itself.

The jurisdiction of the county court, though limited and defined, is original and exclusive over the subject matter of the probate of wills, and fully attaches upon the death of the testator and proof of his domicile or the situation of his estate.  It is said that death of the testator gives to courts of probate general jurisdiction; and proof of the domicile and situation of the estate, both the general jurisdiction of the subject matter, and jurisdiction of the particular case.  3 Redfield on W., 120.

To understand fully the statute, and the application of the authorities cited on the question of jurisdiction, it may be proper to consider the former methods and practice in probate.

Formerly, in England, the ecclesiastical court had jurisdiction only of the probate of wills of *personal* property, and the courts of common law over devises of *real* estate; and the decrees of the ecclesiastical court in reference to the personal estate were final and conclusive as to all persons; but the judgments of the common-law courts, in the case of wills of real property, were conclusive only as between the parties to the suit.  In most of the states, courts of probate have

O'Dell and others vs. Rogers and others.

jurisdiction of wills of both personal and real property; and the statute confers upon our county courts such jurisdiction, by the language, " of all cases of the probate of wills;" and thus full and complete jurisdiction of the probate of all wills is given; not, however, to proceed as in common-law courts, by suit, but in a particular manner defined by statute; and it has been held that the decrees of such courts, in respect to all wills, are final and conclusive as to all parties having notice. 1 Jarman on W., 213; *Potter v. Webb*, 2 Greenl., 257.

The only form of probate in our practice is the *solemn form;* of which all parties interested must have notice, or they are not bound; but the decree is final and conclusive as to all persons having notice. In some of the states, it assimilates to the practice in common-law courts, and an issue of *devisavit vel non* is made up, to which persons interested appear and file a *caveat*, and the issue may be tried by a jury; and it is held in such cases that the proceeding is *in rem*, to which persons interested may appear or be notified to appear, and if they appear or consent to the proceedings, they are bound by the decree, which, to all such parties and their privies, is final and conclusive. *Redmond v. Collins*, 4 Dev., 439. From the very nature of the proceedings, the distinction between jurisdiction of the subject matter, and of the persons or parties interested in it, is, if anything, more clearly marked than in suits at common law in courts of general jurisdiction; and this distinction is expressly recognized in *Bloom v. Burdick*, 1 Hill, 130, cited by appellants' counsel. Indeed, so strongly do the courts lean in favor of the jurisdiction of the court of probate in the proof of wills, that in some of the states it is held that the decree, being in a proceeding *in rem*, is final and conclusive even as to infants and persons under disability (3 Redfield on W., 63, and cases there cited); and in some of the states the statute provides for infants and persons under disability coming in to contest the will within certain time after disability removed. 4 N. H., 406.

It will be observed that whenever the courts, deciding upon the question of the effect, upon a decree of the court of probate, of a want of notice to persons in interest, or of their nonappearance, use the word "*void*," it is used not in the sense of an *absolute nullity*, but of invalidity, and as to such persons only.

In *Smith v. Rice*, 11 Mass., 507, Israel Smith died, leaving an estate in lands, no children, but one brother and three sisters, his only heirs; and the demandant was the brother. The probate court appointed commissioners to partition the estate between them, if it could be done, or to assign the whole to one upon payment of three-fourths of its value to the others. The commissioners did assign the whole estate to one of the sisters upon payment to each of the other three of the sum of $531.51 and interest, as their share of the estate. The report was confirmed by the court, and a decree entered accordingly. The statute of Massachusetts provided that in such case persons interested in the estate residing in the state, or, if absent from the state, their attorneys, if they had any within the state, must be notified of the proceeding; and in the case of minors, provided for the appointment of a guardian, and in case of persons residing out of the state, for the appointment of some discreet person to represent them in the proceeding. The statute also provided, in such assignment of the whole estate to one of the heirs, that the *male* heir should have preference, and might demand the assignment to himself. The three sisters were present and consented to the assignment; and the two received their share of the moneys allotted to them. The brother, the demandant, resided out of the state, and no person was appointed to represent him, and he had no notice. The court, in its opinion, said:. "If it appear that the judge of probate has exceeded his authority, or that he has undertaken to determine the rights of parties over whom he has no jurisdiction, .... the party aggrieved, if, without any laches on his part, he has had no opportunity

to appeal, may consider the act or decree as void; " and in the conclusion of the opinion: "Upon the whole, we are satisfied that the demandant, in the case at bar, is not concluded by the decree of the probate court. It is void as to him; and he is entitled to receive his share of the estate of his brother as if the partition and assignment had not been made;" and in another part of the opinion: "If the demandant had afterwards accepted from the tenant the sum awarded by the probate court, this might have been a *waiver* of the objection to the want of notice, and an assent to the proceedings, which would have rendered them valid." A fuller reference to this case has been made, because it seems to make the distinction between jurisdiction of the subject matter and jurisdiction of the person, in proceedings before the probate courts, which are conceded to have only special and limited jurisdiction, perfectly clear, and in every respect the same as in courts of general jurisdiction; and the case is, in many respects, parallel to this case; and because the counsel for the appellants seem to rely very much upon it as authority to show the *nullity* of this decree of probate.

In the case of *Denning v. Corwin*, 11 Wend., 647, the court acquired no jurisdiction of the *subject matter*, because no affidavit to accompany the petition was made as the statute required; and no jurisdiction of the *parties*, for want of notice. In respect to other authorities cited, it is sufficient to say that none of them militate against this view, but rather establish it.

Attention has been called to our statute, sec. 21, ch. 97, R. S., "No will shall be effectual to pass either real or personal estate, unless it shall have been duly proved and allowed in the county court," etc., as making the decree of probate the inception of title; and if such decree be void *absolutely* for want of notice to the parties in interest, no title would pass to the executors in trust, and all sales made by them under the will would be void, and confer no title upon the purchasers. Aside from this mistaken view of the decree of probate in

cases where the court acquires jurisdiction of the subject matter by the death of the testator and his last domicile, this statute does not change the principle, existing without it, that the title does not spring from the probate, but from the will itself, and the probate operates as a mere authentication, or "the authenticated evidence, and not at all as the foundation of the title to the property disposed of by the will." 1 Jarman on W., 212; 2 Greenl. Ev., § 339. And it is so held in states having the same statute as ours. *Strong v. Perkins*, 3 N. H., 517.

In the cases cited in which the court of probate decreed the sale of the real estate to pay debts, the proceedings are in derogation of the common law, and hostile to the heirs, and can only be instituted in certain conditions of administration, and the facts in the petition must be such as by the statute authorize them; and even in such cases it is held that the petition and proof of the facts confer jurisdiction of the subject matter. *Grignon's Lessee v. Astor*, 2 How., 338; *Sitzman v. Pacquette*, 13 Wis., 325. Jurisdiction of the parties or persons interested, and due notice to them, are also unquestionably necessary to make the sale valid as to them; and such proceeding is in the nature of a suit, and the defendants must have notice as in other cases of suits at law or in equity, and the want of notice would be attended with the same consequences. *Schneider v. McFarland*, 2 Comst., 459. The cases decided by this court, *Rape v. Heaton*, 9 Wis., 328; *Falkner v. Guild*, 10 id., 563; *Gibbs v. Shaw*, 17 id., 197; *Blodgett v. Hitt*, 29 id., 174; *Bresee v. Stiles*, 22 id., 120; *Ruth v. Oberbrunner*, 40 id., 238, and other cases, in which this point is considered, do not in the least conflict with the principle that want of notice only makes such proceedings void as to the persons not appearing or assenting, and that such notice may be waived.

In the application of these principles to the decree of probate under consideration, it is clear that such decree, and the subsequent proceedings in the execution of the will, are void only as to such persons in interest as did not appear or assent

O'Dell and others vs. Rogers and others.

thereto, or as have not since supplied such want of appearance by acts clearly indicating an assent thereto or a ratification thereof. The respondents *Celestia A. O'Dell* and *Geo. W O'Dell* were the executrix and executor and trustees named in the will, and took administration thereof, and were the proponents of the will for probate, and it was their duty to give the requisite notice thereof, and they made all the sales of the estate, and received their shares of the proceeds, and made final settlement with the county court, and, of course, cannot now be allowed to say that the proceedings were void. And even if they claim that they acted under the direction and undue influence of their attorney, *Rogers*, they subsequently, with full knowledge of all the facts, voluntarily, fully and finally confirmed and ratified all the proceedings, and are now estopped from questioning them.

The two heirs *Zeruiah A. Reynolds* and *Mary C. Brewer*, if not personally present at the probate, according to the allegation of the complaint, and which was a conceded point in the case, appeared there by their attorney *Rogers*, and they also subsequently consented to the proceedings by receiving their shares of the proceeds of the sales, and executing receipts and deeds of confirmation.

The respondent *Emma A. Hewitt*, at the times of all the proceedings of probate and of administration, was an infant, and became of age on the 17th day of October, 1873. She was not represented in any of the proceedings by guardian or in other proper manner. And, although the statute is silent as to the appointment of guardian to represent infant heirs and other persons under disability at the probate of wills, such appointment is incidental and necessary in all cases where notice to persons interested in the estate is required; and, if not so represented, the proceedings as to such persons will be void. The defective publication or the want of personal notice or appearance, as to them, are quite immaterial. If the notice had been sufficient as to all persons of proper age, and the pro-

ceedings otherwise regular, the infant heir would not be bound unless represented by guardian, and such infant could not be charged with laches, consent or ratification during the time of minority.    And in this case, if a guardian was appointed for *Mrs. Hewitt* at the time of the settlement of the estate, and acted in her behalf in such settlement and in receiving the proceeds of the sales under the will; and in executing receipts and acquittances therefor, this would not make valid the prior proceedings, in which she was not represented; and there can be no question that, within a reasonable time after becoming of age, she could disaffirm all such proceedings and ask the court to declare them void as to her and set them aside, on the ground of her infancy alone.    *Bresee v. Stiles*, 22 Wis., 120. The only inquiry, therefore, as to her, in respect to the proceedings of probate and the appointment of executor and executrix and their authority to administer the estate under the will, is, Has she done anything since becoming of age tantamount to an appearance at the time and place of the probate, or in assent thereto, or in recognition thereof?    This court held, in *Blackburn v. Sweet, imp.*, 38 Wis., 578, and many other cases, *in effect*, that when the moving party asks some relief which can only be granted upon the hypothesis that the court has jurisdiction of the cause and the person, this is a submission to the jurisdiction, and waives all defects in the service of process; and that where a party seeks to take advantage of a want of jurisdiction, he must object *on that ground alone*, and keep out of court for every other purpose.    This is the only safe and consistent rule in all cases of a want of jurisdiction of the person, by defective service or notice, which may be waived by an appearance.    In August, 1876, *Emma A. Hewitt*, then being of full age, joined in a petition to the county court of Milwaukee county, setting forth the want of sufficient publication of notice of the time and place of the proving of the will, and that no notice was personally served on the persons interested therein, as the only ground for show-

ing that the county court in probate had no jurisdiction to make the order or decree admitting said will to probate, dated the 27th day of May, 1870. It is not stated in said petition that she did not appear by guardian, nor does she rely upon the fact of her infancy and not being represented by guardian, as a ground for such want of jurisdiction to make such decree; and she disaffirms in said petition only " the acts, contracts and instruments made by her during her said minority in reference to said estate, and the settlement, sale and disposition thereof; " and she does not seek to disaffirm the said decree of probate on the ground of her infancy. She charges that *Celestia A. O'Dell* and *George W. O'Dell*, pretending to act as executrix and executor, and *Rogers, Burnham* and *Becher*, took possession of the estate and converted it to their own use, and have never accounted; that said estate has been wrested from the petitioners and other heirs by a cunningly devised system of fraud, etc.; that *Rogers* was the attorney of the testator in his lifetime, and drew the will, and acted as the attorney and counselor of the heirs and the pretended executors of said estate, etc., and, while acting as such by fraud and imposition upon the petitioners and their rights, and abusing trust and confidence, etc., he acquired title to a portion of the estate; and that *Burnham* had knowledge of it; that the estate was sold for a grossly inadequate consideration; that the conveyance to *Celestia A. O'Dell* was a fraud upon the petitioners; and that *Rogers*, as such attorney, by misrepresentation and fraud, caused the petitioners to receive their shares of the proceeds and to execute deeds and receipts, etc., and refused to give them the notes taken for such shares, and never paid them their shares in full; and generally charges that the said county court never acquired jurisdiction of said estate, or of the petitioners, and that all its pretended orders and decrees in this matter are absolutely void, and the pretended sales by the pretended executors are void, as being to and for the benefit of

the attorney for the heirs and pretended executors of said estate, and his privies, through fraud, imposition and the exercise of undue influence and unfair advantage on the part of said attorney, and under a mistake as to their rights and the facts in the case, and for a grossly inadequate consideration; that the pretended sale to *Celestia A. O'Dell* is void, because she was acting as executrix of the estate; that no accounting was ever made to the court; and that the decree is void for want of authority in the court to make it, and by reason of the fraud practiced upon the court and the heirs of said estate. The prayer asks, first, "that the probate of the will and all orders and proceedings in this matter be set aside; " secondly, " *and for such other and further relief as may be just and proper.*"

The complaint in this case is, if anything, much fuller and more explicit in respect to all the fraudulent and unfair dealings with the estate since the decree of probate, by the defendants *Rogers, Burnham* and *Becher*, and the prayer much broader for relief; and in both the petition and complaint, relief is asked consistent only with a *valid proof of the will*, and the due appointment of executors, and holding them as trustees of the estate, as such; and no complaint is made against the validity of the will, or its due proof in court.

The petition and complaint most fully and clearly place the said *Emma A. Hewitt* in the attitude which this court has so frequently held is equivalent to an appearance to the proceeding sought to be declared void for want of notice; and operate as an assent and submission to the proceedings of the court in the probate of the will and the appointment of executors. For the purposes of this case, therefore, we must hold said proceedings valid as to all the parties.

We have next to consider, first, the various subjects of complaint other than that these proceedings are void; and secondly, the relation of the plaintiffs to the matters complained of.

The will of Galutia O'Dell appoints *Celestia A. O'Dell* ex-

ecutrix and *George W. O'Dell* executor, and bequeaths to them, in trust, the whole estate, with full power to sell at public or private sale, at such time or times, and in such tracts and portions, and upon such terms, and in such manner, as to them shall seem meet, and as soon as possible after the death of the testator as the real estate can be sold to advantage, to sell the same, and, after the payment of debts, expenses, etc., to distribute the funds remaining, one-third to *Celestia A. O'Dell*, the wife, and the remaining two-thirds, share and share alike, to the four children.

The will confers upon the trustees the very fullest power and discretion in the sale of the estate; and the terms of the will are not complained of. By the will, no title descends to or is conferred upon the heirs, and their relation to the real estate is only as *cestuis que trust.* They have, however, a direct interest in its sale, and may hold the trustees to the highest responsibility in the execution of their trust, and in the exercise of at least a reasonable discretion in such sale.

In assuming the trust under such an almost unlimited power and discretion, the law imposed upon them the obligation that they should act honestly and fairly, unbiased by any interest they had in the estate, except as a spur to diligence and an encouragement to make the most advantageous sale of the estate, for their own benefit and the equal benefit of all the other beneficiaries; and we think that the law also imposed upon them *the prohibition* that they should not become, directly or indirectly, the purchasers at their own sale as such trustees.

The statute, sec. 27, ch. 94, R. S., in terms, prohibits executors and administrators making sale of real property to pay debts, from purchasing, directly or indirectly, or being interested in the purchase of, any part of the real estate so sold, and makes all such prohibited sales void. This statute, in terms, may not be broad enough to include sales by executors by direction of the will; but the reason and necessity of the

prohibition are greater in the latter case than in the former, and it is held that, without such a statute, where the executors are made trustees by the will, with power of sale, they cannot become the purchasers, unless the will expressly authorizes it. 3 Redfield's Law of Wills, 551.

We think that *Celestia A. O'Dell*, the executrix, indirectly at least, if not directly, became purchaser of a portion of the estate, and that such sale to herself was void.

The respondent *Rogers* was an attorney-at-law, and was thoroughly acquainted with the situation of the estate and its true value, had been the attorney and adviser of the testator in his lifetime, advised with him as to the making of the will in his last sickness, drew the will, and suggested the executrix and executor, and became, on the death of the testator, their attorney and legal adviser, as well as the attorney and legal adviser of the heirs, and, down to the day of final settlement of the estate, had virtually the control of all the proceedings. His trust was the greater, as he had advised the appointment of *Celestia A. O'Dell* as executrix, and *George W. O'Dell* as executor, and trustees by the will — two illiterate and most incompetent persons for such a trust — and against the inclinations at least of the testator, agreeing to advise them in the management of the estate; and, from the evidence, it cannot be doubted that he exercised a controlling influence over the trustees and the heirs, and that they had confidence in his advice and judgment. Under these circumstances, he became the purchaser jointly with *Burnham* and his law partner, *Becher*, of a large part of the estate. Although there is no such preponderance of evidence as would justify this court in disturbing the finding of the circuit court as to the fairness of the sales or the adequacy of the price at the time they were made, and although we are willing to believe that there was no intentional fraud practiced or corrupt influence used by *Rogers*, the attorney, in bringing about the sales to *Celestia A. O'Dell*, and to himself, *Burnham* and *Becher*, yet we can-

not avoid denouncing his conduct, under the circumstances, as grossly improper, if not unlawful. It is evident that he used most remarkable, and perhaps not entirely disinterested diligence in hastening the sales, and probably considered it as advantageous to himself to secure an interest in the property as it would be to the heirs to have the sales made without unnecessary delay. Sales made by trustees and executors to their own attorney, under any circumstances, are held to be even more improper than if made to themselves, for the reason that they are supposed to be made under the influence, if not pressure, of legal advice, and induced by confidential relations which ought to be above suspicion; and this is especially true in this case, "where there is great intellectual inequality, and comparative inexperience on the part of the clients." *Mills v. Mills*, 26 Conn., 213. The law seems to be well settled, that in such cases the attorney will become the trustee of the property so improperly purchased, at the option of the parties interested, and may be charged as fully with the administration of the trust, and be held as responsible for his dealings with the property, by the *cestui que trust*, and be called upon to account, as the original trustee, even where the sale to the attorney " was fairly made, and for what at the time was considered by all the parties a fair price." *James, ex parte*, 8 Vesey, 337.

In no court has this principle been more emphatically recognized, and more pointedly and clearly enforced, than in this, by the opinion of the late lamented Justice Paine in *Gillett v. Gillett*, 9 Wis., 194, and by the able, learned and exhaustive opinions of the chief justice in the late cases, *In re Taylor Orphan Asylum*, 36 Wis., 534, and *Cook v. Berlin Woolen Mill Co.*, 43 id., 433.

It is clear that both *Celestia A. O'Dell* and *Daniel G. Rogers*, the former the executrix, and the latter her attorney, and the attorney of the heirs also, after these sales, occupied the relation of trustees of the property; and from the evidence it

must be held that both *Burnham* and *Becher* had full knowledge of this relation, and participated with *Rogers* in the purchases, and stand affected with whatever disability to purchase attached to *Rogers*, and that they are equally chargeable with the trust. *Hoffman S. C. Co. v. Cumberland C. & I. Co.*, 16 Md., 456.

The 19.52 acres deeded to *Celestia A. O'Dell*, December 2, 1870, and the 9.361 acres deeded to her July 10, 1871, subsequently came back, by deed from one Howard Newkirk, the grantee of *Celestia A. O'Dell*, to *Burnham* and *Rogers*, in April, 1874.

Whatever might have been the attitude of Newkirk in respect to the property, as the purchaser from *Celestia A. O'Dell* with knowledge of her relation to it as trustee, or in collusion with *Rogers*, or otherwise, when the identical estate came back to *Burnham* and *Rogers*, it was chargeable with the same trusts as if the purchase had been made by them directly from *Celestia A. O'Dell*. *Ely v. Wilcox*, 26 Wis., 91.

So far as this case discloses, the title of *Burnham, Rogers* and *Becher* to all third persons, whether defendants herein or not, is not affected by any alleged defects in the proceedings in probate or administration, or by any conduct of the trustees, and must be held valid.

The present relations of the plaintiffs to this trust property remain to be considered.

Very little need be said in respect to the legal attitude of *Celestia A. O'Dell*. She was a party to all of these improper dealings with the estate, and received the proceeds thereof, and can have no standing in a court of equity. And *George W. O'Dell* was a joint trustee, and by his action, also, these proceedings occurred, and he fully assented thereto and received his full share of the proceeds thereof, besides being estopped by his deeds. *Zeruiah A. Reynolds*, with full knowledge of all the facts and proceedings, became dissatisfied with the disposition of the property, and with the conduct of the

executors and of the attorney *Rogers*, and, before receiving her share of the estate, consulted with two competent lawyers of the city of Milwaukee, Judge Mann and Samuel Howard, Esq., and, from her statement of the facts, they advised her fully as to her rights, and that she could have the sales set aside and declared void. After this, she voluntarily abandoned her rights, with her eyes fully open, and received her share also, and executed a quitclaim deed to *Celestia A. O'Dell*, of the 19.52 acres, March 4, 1871, and an instrument, in effect a receipt, release, ratification and confirmation, covering the whole matter, under her hand and seal, on the 27th day of March of the same year. These acts of assent, confirmation and ratification are of the most conclusive character, and, by all of the authorities, must be held to preclude and estop these parties from now questioning the transactions complained of. Kerr on Frauds, 296; *Pearsoll v. Chapin*, 44 Pa. St., 9; Willard's Eq., 169; *Parsons v. Hughes*, 9 Paige, 591; *Karber v. Nellis*, 22 Wis., 215; *State v. Langer*, 29 id., 69; *Grannis v. Hooker*, 31 id., 474; *Booth v. Ryan, imp.*, id., 45; *Mackey v. Stafford*, 43 id., 653.

*Mary C. Brewer* makes no complaint or claim in this case; but it is obvious she stands in the same relation to these transactions as her sister *Mrs. Reynolds*, and would be estopped by similar acts of confirmation.

In respect to *Emma A. Hewitt*, by force of the principles and authorities hereinbefore considered in relation to her, while yet a minor she could do no act and be guilty of no laches or neglect which would conclude her in relation to the trust property or the conduct of the trustees; and after becoming of age she had the option or election to affirm or disaffirm all of the proceedings and transactions affecting her rights, or to treat the trust, as to her, as closed and fully settled, or as a subsisting trust in the property of the estate, and hold the trustees responsible for their dealings with it and management and disposition of it, and demand of them an account-

ing. By the bringing of this suit, she disaffirms all the acts of the trustees, and her own acts while yet a minor, and demands such accounting.

There is no proof that, since she became of age, she has done anything except remain in the quiet and silent enjoyment of what she received while still an infant as her share of the proceeds of the estate. No authority has been cited by the learned counsel, and it is probable none can be found, to show that this conduct alone would amount to such acquiescence, assent or confirmation as would preclude her from demanding the relief asked.

As to the statute of which state, Wisconsin or Minnesota, fixing the time when an infant becomes of age, is to be considered as affecting this plaintiff, *Emma A. Hewitt*, in her relations to the estate, and in the execution of the deeds, receipts, and confirmations alleged to have been made by her, we have no question but that the statute of Wisconsin governs. It is true that by the will she had no title in fee to the real estate of the testator, either by descent or devise; but her interests are connected with and grow out of the real estate situated in Wisconsin; and the statute of this state governs the entire administration, including the sale of the estate, distribution of the proceeds, and the final settlement, even as to persons residing abroad. The *lex rei sitæ*, as well as the law of the domicile of the testator, are both of this state. 3 Redfield on Wills, 31, 35; *Chase v. Chase*, 2 Allen, 101; 6 Jones' Eq., 365.

Statutes fixing the age of majority are personal statutes, and unquestionably govern the contracts and transactions of persons within the states where they are in force; but all the transactions between this plaintiff and the executors and the defendants *Rogers, Burnham* and *Becher* in relation to this estate, must be held to have taken place within this state, where by the statute she was still under the disability of infancy.

The only remaining question as affecting her rights is, Has

so long a time elapsed since she became of age, as to warrant the presumption of her acquiescence in this disposition of her estate, and of her affirmance of her acts done in respect thereto during her infancy? Or in other words, has she been guilty of such laches or unreasonable delay since she became of age, before bringing this suit, as should debar her of the relief she would have been entitled to by greater diligence?

The law and the correct rule in this regard are well expressed in the language of the learned counsel of the respondents in their brief: "A minor is bound to disaffirm her contracts within a reasonable time after attaining her majority." This seems to be the rule in all cases, by the later and better authorities. The limit of such *reasonable time* depends upon the circumstances of each case. *Hawley v. Cramer*, 4 Cow., 717. We cannot hold that in this case such delay has been unreasonable, or that the court should deny the relief she asks, on the ground of laches. She was a resident of the state of Minnesota when she became of age; and there is no proof that she has been in this state, or in the vicinity of the property, or has had any knowledge of any change in its situation or value, since that time.

We shall therefore be compelled to hold that the plaintiff *Emma A. Hewitt* is entitled to the relief asked.

The court has received aid and assistance from the learned counsel on both sides, by their elaborate briefs and able arguments.

The first and second errors of the circuit court in the rejection of evidence, complained of, "in refusing to allow the plaintiffs to prove that *Burnham, Rogers* and *Becher* had sold a part of the land, and for what price it had beeen sold, and also how much had been realized from sales, prior to June, 1872," and "in rejecting evidence showing what lots of land of the same character as the land in question, and which faced upon and abutted it, were sold for at the same time," may be considered together. The first question might have been per-

tinent in matters of accounting, but was certainly immaterial in ascertaining the value of the property at the time of the sale; and the second would open a new controversy and side issue, involving an inquiry into various conditions, situations and circumstances of other property, which might not at last approximate to the point of showing the value of the land in question; and at best the evidence would be uncertain and of little weight; and we think the court properly rejected both.

The third error assigned is, as to allowing the witness O'Neal to testify as to the stone quarry on the land purchased by him, and a part of the land in question. The court very properly allowed it, for it showed the *quality* of the land, and its intrinsic character. And the evidence was properly rejected showing what O'Neal paid for that part of the property in October, 1873, and what it was then worth. 1 Greenl. Ev., § 51.

As to the fourth error assigned, on the rejection of the evidence of *Geo. W. O'Dell*, on cross examination, as to what he would have done "if he had supposed that the sale of that land could have been broken up:" the question involved two subjects of inquiry quite impertinent to the case; the first, as to what he *would have* done, instead of what he *did* do; and the second, his *supposition* as to his legal *rights*, instead of his *knowledge* of the *facts;* neither of which could possibly have any bearing upon the question of confirmation.

We have now considered all the material questions raised; and it remains only to determine the legal consequences of their decision, in the future proceedings of the case in the circuit court.

The conclusion seems to be inevitable, that the judgment of the circuit court, so far as it affects the plaintiffs *George W. O'Dell, Celestia A. O'Dell* and *Zeruiah Ann Reynolds,* must be affirmed, with costs; that so far as it affects the plaintiff *Emma A. Hewitt,* it must be reversed, with costs; that the complaint and suit stand as to *Emma A. Hewitt,*

plaintiff, against *Daniel G. Rogers, George Burnham* and *John A. Becher*, defendants; and that she have judgment against them for the relief asked in the complaint; and the cause is remanded with directions to the circuit court to proceed according to the opinion.

*By the Court.* — So ordered.

RYAN, C. J., and LYON, J., took no part.

The respondents asked for a rehearing on the ground that some parts of the "relief asked in the complaint" were inconsistent with the views of this court as expressed in the opinion, and that the instructions to the circuit court respecting the relief to be granted the plaintiff *Emma A. Hewitt* ought therefore to be modified. The motion was denied, with $25 costs.